## Isaac Coffin, Judge, &c. *versus* Daniel Jones. 45

In debt on a bond, issues are joined on the pleas of *non est factum, solvit ad diem* and *solvit post diem,* and the verdict is, that " the defendant is not indebted to the plaintiff." *Held,* that the verdict was substantially defective, as it did not appear by it that the jury were agreed on any one of the issues submitted to them.

When the jury returned the foregoing verdict, the foreman stated that they were divided on the issue of *non est factum,* but that they were all agreed, that if the bond was the defendant's deed, it had been paid; they were then permitted to separate, and before they came into court again to affirm the verdict, one of them conversed about the case with the defendant's counsel. *Held,* that the verdict could not be amended so as to conform to the explanation given by the foreman.

In an action upon an administration bond, evidence that the parties interested in the estate of the intestate agreed that the administration should be suspended or waived, and that with their consent the property was delivered over to the intestate's widow, will not, *it seems,* sustain the plea of payment or performance.

But if those facts would amount to a legal defence, they might perhaps be pleaded as an excuse for non-performance, or as accord and satisfaction.

Debt upon an administration bond, dated March 15, 1805, made to the judge of probate for the county of Nantucket. The action was commenced in 1824. The defendant pleaded, 1. *non est factum* ; 2. *solvit ad diem* ; and 3. *solvit post*

---

[1] **Story on Bailments,** § 529, *and cases cited*

*diem.* Issues were joined on these several pleas. At the trial before *Putnam* J. the jury found, " that the defendant is not indebted to the plaintiff in manner and form as alleged in the writ and declaration."

In regard to the second issue, the jury were instructed — that if they should be satisfied from the evidence, that the heirs of the intestate, after the supposed date of the bond, agreed with his widow, that the administrator (for whom the defendant was surety) should not proceed in the settlement of the estate in the probate office, but that all the property which belonged to the intestate should be delivered over to the widow for her use during her life, the heirs to divide among them what she might leave at her death, and that the heirs intended that such payment should operate just as if it had been paid to themselves under an order of distribution, and that the administrator did deliver over the property to the widow accordingly — they might, from that evidence and the great length of time which had elapsed since the date of the bond, presume that the bond was discharged and paid, notwithstanding there was no evidence of any such agreement under seal.

At the time when the jury returned into court with their verdict, neither of the counsel was present ; and the jury being interrogated by the judge, whether they found their verdict on the ground that the bond declared on was not the deed of the defendant, the foreman said that they were unequally divided upon that point, but that they all agreed that if it was a good bond originally, it had been paid and discharged. After this inquiry and before the jury separated, the defendant's counsel came into court. The jury were then permitted to separate, with an intimation from the judge, that their verdict should be put into form and they might affirm it the next day. When they came in on the next day, they said that they had an opinion as to the bond's having been altered, as alleged at the trial, and could probably have made their verdict upon that point. The judge inquired if they had had any conversation in relation to the case since they had separated. Gibbens, one of the jurors, answered upon oath, that Mr. Coffin, who was one of the defendant's counsel, came into his store to

buy grapes ; that Coffin said nothing about the case, but he (Gibbens) said to Coffin, "You probably thought we should not have formed a verdict so soon ; " that Coffin said he had felt very much interested in the case, for that Jones was an excellent man ; that they talked about the case possibly about two minutes ; that the impression left on the mind of Gibbens was somewhat more unfavorable than before, in regard to one of the plaintiff's .witnesses ; and that he (Gibbens) supposed the verdict was completed.

The defendant was desirous of having an inquiry made of the jury, what their opinion was in regard to the alleged altera- tion of the bond after it was signed. But the plaintiff object- ed, and the judge did not put the question. The defendant then moved to have the verdict affirmed as it was originally brought into court ; which was done, notwithstanding the plain- tiff objected to it.

*Rand* and *K. Whitman* now objected, that the verdict va- ried substantially from the language of all the issues ; and that both in point of law and in point of fact, it could not be made out by argument and inference that one or another of the issues was found for the defendant. Com. Dig. *Pleader*, *S.* 22 ; *Gerrish* v. *Train*, 3 Pick. 124 ; *Stearns* v. *Barrett*, 1 Mason, 170 ; *Baugh* v. *Phillips*, 1 Rol. Rep. 257 ; 2 Rol. Abr. 693 ; 21 Viner, 390, *Trial*, *S. f.* ; *Patterson* v. *United States*, 2 Wheat. 221 ; *Rex* v. *Woodfall*, 5 Burr. 2669.

The conversation with the juror in relation to the case, after the jury had separated and before the verdict was affirmed, is a sufficient cause for setting the verdict aside. *Blackley* v. *Sheldon*, 7 Johns. R. 33 ; *Root* v. *Sherwood*, 6 Johns. R. 68 ; *Edelen* v. *Thompson*, 2 Har. & Gill, 31 ; *Ropps* v. *Bar- ker*, 4 Pick. 242 ; *Knight* v. *Freeport*, 13 Mass. R. 218.

*S. Hubbard* and *Bartlett* in support of the verdict. The finding of one issue, which by necessary or fair implication finds the others, is sufficient ; and here the jury have found substantially an issue of payment, (their explanation in answer to the question of the judge being a part of their finding,) which covers the other issues, and the court will work the finding into form. *Spring* v. *Gray*, 5 Mason, 506 ; *Porter* v. *Rummery*, 10 Mass. R. 64 ; *Brunswick* v. *M'Kean*, 4

Greenl. 508 ; *Hodges* v. *Raymond*, 9 Mass. R. 318 ; *Hawks* v. *Crofton*, 2 Burr. 698.

The conversation between the juror and the counsel was accidental and manifestly without any improper design. The misbehaviour of a jury after a cause has been committed to them, subjects them to punishment, but whether it shall avoid their verdict or not, is a matter within the discretion of the court. *Burrill* v. *Phillips*, 1 Gallison, 363 ; *Smith* v. *Thompson*, 1 Cowen, 221, and note ; *Horton* v. *Horton*, 2 Cowen, 589 ; *Winslow* v. *Draper*, 8 Pick. 170.

*March 14th.* WILDE J. delivered the opinion of the Court. The plaintiff objects to the verdict as defective and not conformable to the issues ; and to this objection two answers are given by the defendant's counsel. The first is, that the defect is merely formal, the verdict being substantially good and decisive of the case. And if not so, then secondly, that the verdict may be now amended and set right according to the disclosure made by the foreman of the jury at the time the verdict was returned into court.

As to the first point, it is undoubtedly true that a mere formal defect in a verdict is immaterial. It is not necessary that it should follow the precise language of the issue ; but it must be responsive to it, and so expressed as to render it certain that the jury decided the question or questions submitted to them ; and any uncertainty on this point is fatal.

Now we think it does not appear in the present case, that the jury were agreed as to any one of the issues, for they might have been divided in opinion as to each, and yet have agreed in the verdict returned. Some of the jury, for instance, might have been of opinion that the deed had not been executed by the defendant, or that it had been improperly altered, but that no payment had been made ; while others might be satisfied with the evidence of the execution of the deed, and also of the payment. If the jury were thus divided in opinion, they could not agree on either of the issues, yet they would all agree that the defendant was not indebted. It cannot, therefore, be ascertained by the terms of the verdict, that the jury were agreed as to any one of the issues ; so that

the verdict is substantially defective and uncertain. The is- <span>Coffin<br>v.<br>Jones.</span>
sues are not found directly nor by necessary implication.

Then can this verdict be amended ? It has long been the
established practice in England to allow defective verdicts to
be amended by the judge's notes ; and this practice has been
recently sanctioned by this Court in the case of *Clark* v.
*Lamb*, 8 Pick. 415. The present case, however, does not
come within that rule. Here the question is, whether the
verdict can be altered so as to conform to the explanation
made by the foreman of the jury. On a short examination
I have found but one case, in which a verdict was allowed to
be amended on the affidavit of the jury. This was allowed in
the case of *Mayo* v. *Archer*, 1 Str. 514. It was, however, a
very trifling amendment on a point which was afterwards ad-
judged to have been immaterial ; and it was decided without
much discussion. This case, and some other cases not report-
ed, were referred to by Lord *Mansfield* in the case of *Cogan*
v. *Ebden*, 1 Burr. 384, with apparent approbation. A rule to          49
show cause was granted, but the matter was not again moved.
Then followed the case of *Spencer* v. *Goter*, 1 H. Bl. 78 ;
in which the court refused any such amendment, saying that
the only remedy was a new trial. The same decision was
made in the case of *Jackson* v. *Williamson*, 2 T. R. 281,
which seems to have settled the English practice.

This was a strong case, and the mistake of the jury was
clearly proved by the affidavit of all the jurors. It was an
action against the sheriff for wrongfully seizing and selling
the plaintiff's lighter, the value of which was estimated by
some of the witnesses at 60*l.* but it was sold for only 31*l.*
The jury testified that they meant to give 30*l.* as dam-
ages over the 31*l.* for which the lighter had been sold, and
that they supposed the prothonotary would of course add the
31*l.* to the damages found by the jury. The plaintiff's coun-
sel were not in court when the verdict was delivered : but
immediately after, learning the mistake, they applied to the
court to suffer the verdict to be set right according to the in-
tention of the jury. The defendant's counsel did not suggest
a doubt of the actual mistake, but they objected to the practice
as highly dangerous and improper ; and the objection was sus-

Coffin
*v.*
Jones.

tained by the court. They say that such a practice would be productive of infinite mischief, and that it was better that a party should suffer an inconvenience, than that a rule so dangerous should be introduced. This case seems to us to have been decided on principles of sound policy. To allow the jury to alter their verdict after delivering it into court, and after separating and conversing with either of the parties, would be opening the door to fraudulent practices, and if it would have no worse effect, it certainly would tend to impair the public confidence in the administration of justice. We think, therefore, the judge decided correctly in refusing to suffer the verdict to be altered, after it was returned into court; and for the reasons given, that it cannot be now amended.

As the case must be sent to a new trial, and as it has been long pending, I think it proper to suggest to counsel, that we doubt whether the evidence, as reported, is sufficient to support the plea of payment. The evidence does not seem to show payment in a technical sense, nor strictly the performance of the condition of the bond. It tends to show that the administration was agreed to be suspended or waived by the parties interested in the estate; that the personal estate was accordingly delivered over to the widow by their consent, and that the administrator was not in fault. If these facts were pleaded as an excuse for non-performance of the condition of the bond according to the letter, or as accord and satisfaction, the plea would probably be sustained if the facts amount to a legal defence. Of this however we give no decided opinion

*Verdict set aside and new trial granted.*